JUSTICE ALBIN delivered the opinion of the Court.
**319 In this appeal, we must determine whether a homeowner, who challenges the issuance of a zoning permit allowing construction on neighboring property, has a statutory right to be heard before the Borough's Planning Board, and if so, whether the violation of that right gives rise to an action under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2.
Plaintiff Mary Harz filed a lawsuit under the Civil Rights Act against defendants Borough of Spring Lake and its zoning officer. Harz claimed that a zoning permit issued to her neighbor for construction of a residence violated the Borough's land-use ordinance and that, when she appealed, she was denied her right to be heard before the Planning Board-a right required by provisions of the Municipal Land Use Law (MLUL).[1] See **320 N.J.S.A. 40:55D-70 ; -72(a). In her lawsuit, she contends that the denial of that statutory right contravened a substantive right protected by the Civil Rights Act, entitling her to relief.
The trial court granted defendants' motion for summary judgment and dismissed Harz's civil rights claim. The Appellate Division reversed, concluding that the Borough violated a substantive right-Harz's statutory right of "obtaining a board's review of an alleged zoning violation."
Based on the summary judgment record, we cannot conclude that the Borough denied Harz a substantive right cognizable under the Civil Rights Act. The record does not support a finding that the Borough blocked Harz from eventually securing a timely review by the Planning Board. More specifically, Harz did not exhaust the administrative means available under the *549 MLUL to have her objections heard by the Board.
Although the Borough's zoning officer did not adhere to the precise statutory procedures for processing Harz's appeal, that deviation ultimately did not infringe on Harz's right to have her objections reviewed by the Board. Further, Harz cannot show that her success in securing a Superior Court order imposing temporary restraints on her neighbor's construction was the catalyst for the Board providing her a three-day hearing. The Planning Board scheduled that hearing after Harz filed an appeal in the ordinary course under the MLUL.
We do not take issue with Harz's claims that the Borough could have responded in a more efficient way to her objections. In the end, however, Harz has not established that the Borough denied her the right to be heard before the Planning Board. She therefore cannot demonstrate that she was deprived of a substantive right protected by the Civil Rights Act.
**321 Accordingly, we reverse the judgment of the Appellate Division and dismiss Harz's civil rights claim.
I.
To understand the facts presented and issues raised in this case, we begin with a brief primer on the relevant MLUL provisions governing this case.
The MLUL was "designed to reform the procedures for the planning and regulation of land uses." L. 1975, c. 291; Governor's Statement to S. 3054 (Jan. 14, 1976). Important for our purposes is the process set forth in the MLUL for appealing from decisions of administrative officers, such as a zoning officer. Typically, a zoning officer must issue a zoning permit before a construction official can issue a permit to an applicant seeking to build on a lot. William M. Cox & Stuart R. Koenig, N.J. Zoning & Land Use Administration (Cox & Koenig) § 2.8 at 16 (2018). Before issuing a permit, the zoning officer must first determine that the applicant's intended plans for the property are permissible under both the zoning laws of the municipality and the MLUL. Id. § 2.8 at 16-17.
N.J.S.A. 40:55D-70(a) empowers the board of adjustment to "[h]ear and decide appeals where it is alleged by the appellant that there is error in any order, requirement, decision or refusal made by an administrative officer based on or made in the enforcement of the zoning ordinance." Section 70(a) permits appeals to a board of adjustment not only by property owners who are denied zoning permits to build on their property, but also those who are aggrieved by the issuance of such permits. See Cox & Koenig § 26-1.1 at 559.
To that end, N.J.S.A. 40:55D-72(a) specifically provides that "[a]ppeals to the board of adjustment may be taken by any interested party affected by any decision of an administrative officer of the municipality based on or made in the enforcement of the zoning ordinance." (emphasis added). The MLUL broadly defines an "interested party" as "any person, whether residing within or without the municipality, whose right to use, acquire, or enjoy property is or may be affected by any action taken under **322 [the MLUL]," "in an administrative proceeding before a municipal agency." N.J.S.A. 40:55D-4 (emphasis added). An interested party clearly includes a neighbor who is affected "by the grant of a building permit that will result in a structure [on adjacent property] that violates the zoning ordinance." Cox & Koenig § 26-1.1 at 559.
N.J.S.A. 40:55D-72(a) also sets forth the timeframe and process for filing an appeal to the board of adjustment and the obligation *550 of the administrative officer to transmit the appeal:
Such appeal shall be taken within 20 days by filing a notice of appeal with the officer from whom the appeal is taken specifying the grounds of such appeal. The officer from whom the appeal is taken shall immediately transmit to the board all the papers constituting the record upon which the action appealed from was taken.
Section 72(a) does not specify the event that triggers the commencement of the twenty-day limitations period. See Trenkamp v. Township of Burlington, 170 N.J. Super. 251, 267, 406 A.2d 218 (Law Div. 1979). In the case of an applicant who receives direct notice of the denial of a zoning permit, the notice appears to be the obvious trigger. However, because no provision requires the administrative officer to notify a nearby property owner about the issuance of a zoning permit, the property owner may not know of the official action until well beyond the twenty-day limitations period. See Cox & Koenig § 26-1.2 at 560. In that circumstance, courts have taken the sensible position that "the time for appeal begins to run from the date an interested person knew or should have known of the permit's issuance." Trenkamp, 170 N.J. Super. at 268, 406 A.2d 218 ; see also Sitkowski v. Zoning Bd. of Adjustment of Lavallette, 238 N.J. Super. 255, 260, 569 A.2d 837 (App. Div. 1990).
Two other procedural requirements are imposed by the MLUL upon the filing of a zoning appeal. First, "[t]he board of adjustment shall render a decision not later than 120 days after the date ... an appeal is taken from the decision of an administrative officer." N.J.S.A. 40:55D-73(a)(1).[2] Second, "[a]n appeal to the **323 board of adjustment shall stay all proceedings in furtherance of the action in respect to which the decision appealed from was made unless" the administrative officer certifies that a stay would "cause imminent peril to life or property." N.J.S.A. 40:55D-75. The statutory language is less than clear about whether the filing of the appeal stays the effect of a zoning permit without the issuance of a separate stop work order. However, commentators have opined that "[p]resumably a timely appeal by a neighbor would, under this section, stay the right to build pursuant to the permit granted until its validity could be ruled on by the zoning board of adjustment." Cox & Koenig § 26-1.5 at 562.
The applicable MLUL provisions, when viewed in their entirety, clearly indicate that the board of adjustment (or planning board acting as a board of adjustment) must conduct a review of an appeal challenging the issuance of a zoning permit and must render a decision. That much is clear because (1) an "interested party" may appeal a decision of a zoning officer to the board, and the zoning officer must transmit "all the papers constituting the record" of the appeal to the board, N.J.S.A. 40:55D-72(a) ; (2) the board is empowered to "[h]ear and decide appeals," N.J.S.A. 40:55D-70(a) ; and (3) the board must "render a decision" within 120 days, N.J.S.A. 40:55D-73(a)(1).
The nature and extent of the board's review or any hearing is not the issue before us.
II.
The relevant facts are adduced from the summary judgment record.
*551 On December 31, 2009, the Borough of Spring Lake's then zoning officer issued a zoning permit (First Permit) to Thomas Carter to construct a two-and-a-half-story residence and a detached **324 garage on property he owns in the Borough. Plaintiff Mary Harz owns adjoining residential property and was unaware of the issuance of the permit at the time. In the late spring of 2010, after construction began on Carter's residence, Harz observed that the structure's foundation appeared to be too high. Harz then reviewed the development plans on file at the Spring Lake Zoning Office and brought to the attention of the new Borough zoning officer her concern that Carter's foundation exceeded the height permitted by the Borough's zoning ordinance. Unsatisfied with the zoning officer's responses, Harz retained an attorney.
On June 21, 2010, Harz's attorney forwarded a letter to the zoning officer appealing the issuance of the zoning permit. The letter alleged that the construction plans for Carter's property allowed for an impermissible elevation of the property, improper retaining walls, and an excessive height of the building in violation of various provisions of the Borough's land-use ordinance. The letter further requested that the zoning officer transmit "the papers constituting the record" to the Planning Board, the body responsible for hearing the appeal.
Instead of transmitting the appeal to the Planning Board, the zoning officer requested that Carter's engineer and architect revise the proposed construction plans. Carter's attorney gave "verbal assurances" to Harz's attorney that construction would not proceed until the zoning officer approved the revised plans. The zoning officer did not issue a stop work order or rescind the zoning permit, as requested by Harz, but evidently construction on the project effectively ceased.
When Carter submitted revised plans, the zoning officer rejected them, specifying that the plans' shortcomings would have to be addressed before the issuance of an amended permit. On August 3, 2010, the zoning officer approved a new set of revised plans and issued an amended zoning permit (Second Permit).
The next day, Harz's attorney forwarded a letter to the zoning officer appealing from the Second Permit on the ground that Carter's revised plans still violated the Borough's height regulations.
**325 This time the zoning officer transmitted the appeal and all relevant documents to the Planning Board, which scheduled a hearing for the evening of August 11. Two days before the hearing, Harz's engineer forwarded a letter to the Board's engineer, identifying parts of the construction plans that violated the Borough's land-use ordinance.
On the day that the hearing was scheduled, the Board's engineer emailed the Board and the parties an opinion letter stating that Carter's construction plans were not in full conformance with the Borough's land-use ordinance. The Borough attorney cancelled the hearing set for that evening, and the zoning officer rescinded the amended zoning permit. The next day, the zoning officer issued a stop work order on Carter's project.
Carter submitted revised construction plans, and on September 1, 2010, the zoning officer issued another permit (Third Permit). Harz believed that the revised plans still violated the Borough's land-use ordinance. She did not proceed with a direct appeal to the Planning Board, pursuant to N.J.S.A. 40:55D-72(a). Instead, she filed in Monmouth County Superior Court an Order to Show Cause and an action in lieu of prerogative writs seeking temporary restraints to enjoin the construction project until Carter applied for appropriate *552 variances before the Planning Board. On September 7, the Superior Court granted relief by entering a temporary restraining order and directed the parties to appear for a hearing on the Order to Show Cause. On September 16, the court entered an order continuing the temporary restraint on construction.[3] The next day, Harz appealed to the Planning Board through the zoning officer, challenging the issuance of the most recent permit.
In response to the appeal, the Planning Board conducted a three-day hearing in October and November. On January 12, 2011, the Planning Board passed a Resolution granting in part and denying in part Harz's appeal. The Board agreed with Harz that **326 Carter's plans would have resulted in a three-story home in violation of the ordinance restricting the height of the structure to two-and-a-half stories. The Borough also agreed that the ordinance prohibited the construction of retaining walls and the grading done on the property. The Borough rejected, however, a number of other objections Harz raised.
Accordingly, the Board rescinded the Third Permit until Carter satisfied the conditions set by the Board for the construction project. On February 9, 2011, after Carter met those conditions, the zoning officer issued a final zoning permit.
No appeal was taken from the issuance of that permit.
III.
A.
On August 1, 2011, Harz filed a federal and state civil rights action against defendants Borough and Philip Kavanaugh, the initial zoning officer, in the Monmouth County Superior Court, Law Division. Harz brought claims under 42 U.S.C. § 1983, alleging that defendants violated her First Amendment right to petition the government and her right to due process and equal protection guaranteed by the Fourteenth Amendment. She also brought a claim under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2, alleging that defendants violated her substantive rights under the New Jersey Constitution and state laws. Last, Harz alleged that defendants engaged in both willful misconduct by issuing the First Permit and civil conspiracy. She sought compensatory and punitive damages as well as attorney's fees.
The nub of Harz's complaint is that she had to expend substantial funds to retain a lawyer and other licensed professionals in battling the improperly issued zoning permits. She alleges that but for the stop-work injunction she secured from the Superior Court, the Borough would have continued to infringe on her right to have the Planning Board hear her appeal from the issuance of the **327 zoning permits. Harz credits her Superior Court complaint as the "catalyst" for vindicating her rights.
The trial court granted the Borough's and Kavanaugh's motion for summary judgment on all of Harz's claims and dismissed the complaint. In dismissing Harz's state civil rights claim, which alleged a violation of her substantive right to a hearing before the Planning Board pursuant to the MLUL, the trial court explained: "There's nothing in the statute which established a right to a hearing on every appeal. [Harz's] interpretation that the 'right to be heard' means the right to a hearing is flawed. [Harz] may be 'heard' by filing her appeal."
*553 B.
In an unpublished opinion, the Appellate Division affirmed the dismissal of all of Harz's claims, except her state civil rights claim against the Borough. The panel found that the trial court improvidently granted summary judgment because the evidentiary record supported the basis for a violation of a substantive right under the Civil Rights Act. That claim therefore was remanded for further proceedings.
The panel determined that, under N.J.S.A. 40:55D-72, Harz had a substantive right to appeal the issuance of the First and Second zoning permits. The panel maintained that the Borough violated that right when the zoning officer failed to transmit her initial appeal to the Planning Board and later, after the rescission of the Second Permit, when the Borough attorney cancelled the hearing before the Board. Relying on Tumpson v. Farina, 218 N.J. 450, 95 A.3d 210 (2014), the panel reasoned that "[t]he failure to transmit a zoning appeal and the unauthorized cancellation of a board meeting give rise to a cause of action to compel compliance." The panel essentially concluded that Harz's prerogative-writs action was the means by which Harz vindicated her substantive right to secure the "[B]oard's review of an alleged zoning violation."
**328 We granted the Borough's petition for certification challenging the reinstatement of Harz's state civil rights claim. 229 N.J. 591, 164 A.3d 393 (2017).
IV.
A.
The Borough argues that N.J.S.A. 40:55D-72 does not confer on an "interested party," such as Harz, the "right to a board hearing" on an appeal challenging the issuance of a zoning permit and therefore the Appellate Division erred in finding the violation of a cognizable substantive right under the Civil Rights Act. According to the Borough, Section 72(a) "merely sets forth a discretionary procedure by which an interested party can appeal a zoning permit to a board." It submits that, even assuming that Section 72(a) confers a right to appeal to a Board, Harz "received relief under the statute because the appealed zoning permits issued to her neighbors were either withdrawn (after Harz's first Notice of Appeal) or rescinded (after Harz's second Notice of Appeal)." In the Borough's view, the withdrawal and rescission of the permits rendered moot Harz's appeals to the Board. Last, the Borough contends that the zoning officer's "failure to immediately transmit the record to the Planning Board" was, at most, a procedural defect rather than the violation of a substantive right under the Civil Rights Act.
B.
Harz contends that the MLUL conferred on her the substantive right to a Board "hearing" on her appeal challenging the issuance of the zoning permits. She asserts that the substantive right to a hearing is readily discernable from the statutory scheme, which provides her the right to appeal the zoning officer's decision, N.J.S.A. 40:55D-72(a), entitles her to a decision from the Planning Board, N.J.S.A. 40:55D-73(a)(1), and "vests the Board with the power to 'hear and decide the appeal, N.J.S.A. 40:55D-70(a).' "
**329 Harz argues that the zoning officer did not abide by the unambiguous statutory obligation, which required that he transmit the appeal to the Board. She further argues that neither the Borough attorney nor zoning officer had the statutory authority to cancel the Board hearing after the rescission of the Second Permit. She disputes the Borough's claim that she received *554 relief because the first two permits issued were, in effect, rescinded and instead insists that her "substantive right was to receive 'relief' from the Board." Finally, Harz submits that her substantive statutory rights were vindicated only because she filed a prerogative-writs action in Superior Court, which resulted in her receiving injunctive relief and having her appeal heard by the Board.
V.
A.
In determining whether the trial court properly granted summary judgment-or the Appellate Division properly reversed-we apply the same standard used by those courts: we view the evidence in the light most favorable to Harz, who was the non-moving party. See Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584, 46 A.3d 1262 (2012). Our review of the law-both the MLUL and the Civil Rights Act-is de novo, and we owe no deference to the interpretive conclusions of either the trial court or Appellate Division. Ibid. Indeed, we may review the statute "with fresh eyes." Fair Share Hous. Ctr., Inc. v. State League of Municipalities, 207 N.J. 489, 493 n.1, 25 A.3d 1063 (2011).
B.
The core issue is whether the Borough of Spring Lake deprived Harz of a cognizable substantive right to be heard by the Planning Board under the MLUL in violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2. In addressing that issue, we first turn to the relevant language of the Civil Rights Act.
**330 Subsection (c) of N.J.S.A. 10:6-2 provides in part: "Any person who has been deprived of ... any substantive rights, privileges or immunities secured by the Constitution or laws of this State, ... by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief." N.J.S.A. 10:6-2(c). The prevailing party in a private cause of action under the Civil Rights Act may also receive "reasonable attorney's fees and costs." N.J.S.A. 10:6-2(f). Indeed, the attorney's fee provision is one of the Civil Rights Act's "most powerful remedies" because it allows average citizens to attract competent counsel to vindicate their substantive rights when violated by official action. Tumpson, 218 N.J. at 479-80, 95 A.3d 210.
"[O]ur State Civil Rights Act is modeled off of the analogous Federal Civil Rights Act, 42 U.S.C. § 1983, and is intended to provide what Section 1983 does not: a remedy for the violation of substantive rights found in our State Constitution and laws." Id. at 474, 95 A.3d 210 (citing S. Judiciary Comm. Statement to S. 1558 (May 6, 2004); Governor's Statement upon Signing A. 2073 (Sept. 10, 2004) ). Although the Civil Rights Act does not define substantive rights, we have recognized that "the term is broad in its conception." Id. at 473, 95 A.3d 210. We have looked to federal jurisprudence construing 42 U.S.C. § 1983 to formulate a workable standard for identifying a substantive right under the Civil Rights Act.[4] Id. at 474-77, 95 A.3d 210. In doing so, we adopted the *555 three-step test set forth in Blessing v. Freestone, 520 U.S. 329, 340-41, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), id. at 475, 477, 95 A.3d 210, which we will now refine in light of Gonzaga University v. Doe, 536 U.S. 273, 283, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), for defining when a statute confers an individual substantive right. **331 In accordance with Tumpson, the first step is determining whether the Legislature "intended the statute" to confer a "benefit" on an individual. 218 N.J. at 475, 477, 95 A.3d 210 (citing Blessing, 520 U.S. at 340-41, 117 S.Ct. 1353 ). Gonzaga, however, emphasized that nothing "short of an unambiguously conferred right" will support a cause of action under the federal civil rights law. 536 U.S. at 283, 122 S.Ct. 2268.
In Gonzaga, the student plaintiff filed a Section 1983 lawsuit seeking damages against Gonzaga University for failing to enforce provisions of the Family Educational Rights and Privacy Act of 1974 (FERPA), a federal law that "prohibit[s] the federal funding of educational institutions that have a policy or practice of releasing education records to unauthorized persons." Id. at 276, 122 S.Ct. 2268. The student contended that Gonzaga's disclosure of his disciplinary records to unauthorized third persons violated FERPA and therefore entitled him to damages under Section 1983. Id. at 277, 122 S.Ct. 2268. The Supreme Court determined that although FERPA's nondisclosure provisions were enforceable against the University by the government, those provisions did not confer on the student a privately enforceable right against the University. Id. at 290, 122 S.Ct. 2268. The Supreme Court explained that "it is rights, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of [ Section 1983 ]." Id. at 283, 122 S.Ct. 2268. Thus, the test is "whether Congress intended to create a federal right" enforceable by the person directly benefitted. Id. at 283-84, 122 S.Ct. 2268.
Thus, in light of Gonzaga, we now recalibrate the first step. In the three-step test, a court must determine: (1) whether, by enacting the statute, the Legislature intended to confer a right on an individual, ibid.; (2) whether the right "is not so 'vague and amorphous' that its enforcement would strain judicial competence," Tumpson, 218 N.J. at 475, 95 A.3d 210 (quoting Blessing, 520 U.S. at 340-41, 117 S.Ct. 1353 ); and (3) whether the statute "unambiguously impose[s] a binding obligation on the [governmental entity]," ibid.
**332 In addition to satisfying those three "factors," for purposes of our Civil Rights Act, plaintiffs must also "show that the right is substantive, not procedural." Id. at 478, 95 A.3d 210 (explaining that " '[s]ubstantive' addresses those rights and duties that may give rise to a cause of action, whereas 'procedural' addresses 'the manner and the means' by which those rights and duties are enforced" (citations omitted) ). Because our description of substantive rights in Tumpson may not be sufficiently precise, we use this occasion to provide additional guidance.
In essence, a substantive right is "[a] right that can be protected or enforced by law; a right of substance rather than form." Black's Law Dictionary 1437, 1438 (9th ed. 2009) (defining a procedural right, in contrast, as "[a] right that derives from legal or administrative procedure; a right that helps in the protection or enforcement of a substantive right"). Certain substantive rights are readily familiar to us: the "unalienable rights" of "enjoying and defending life and liberty, [and] acquiring, possessing, and protecting property," N.J. Const. art. I, ¶ 1 ; see also U.S. Const. amend. XIV ; the right to freedom of speech and to petition the government for *556 redress of grievances, U.S. Const. amend. I ; the right to not have private property taken for public use without just compensation, U.S. Const. amend. V ; and the right to be free from unreasonable seizures, U.S. Const. amend. IV. There are many other substantive rights specifically mentioned in our Federal and State Constitutions. Other substantive rights are identified in our constitutional jurisprudence, such as: the right to privacy, In re Quinlan, 70 N.J. 10, 39-40, 355 A.2d 647 (1976) ; the right to marriage, Obergefell v. Hodges, 576 U.S. ----, 135 S.Ct. 2584, 2597-99, 192 L.Ed.2d 609 (2015) ; and the right to parental autonomy, Johnson v. Johnson, 204 N.J. 529, 543-44, 9 A.3d 1003 (2010). Still other rights are conferred by statute. See Rosenberg v. Town of North Bergen, 61 N.J. 190, 199-200, 293 A.2d 662 (1972) ("The Legislature is entirely at liberty to create new rights or abolish old ones as long as no vested right is disturbed."). **333 Here, the nature of the substantive right at issue-a property right-is clearly identifiable. The right of an interested party to appeal the issuance of a zoning permit-to have her concerns "heard"-is rooted in principles of property rights, specifically the right to not be deprived of an interest in one's property without process. Thus, "any person, whether residing within or without the municipality, whose right to use, acquire, or enjoy property is or may be affected by any action taken under [the MLUL]" is an "interested party." N.J.S.A. 40:55D-4 ; see also N.J. Const. art. I, ¶ 1 (guaranteeing right to acquire, possess, and protect property). Because an adjacent property owner's rights "may be affected" by construction on neighboring property, the adjacent owner-as an interested party under the MLUL-has a right to have her concerns heard in some form.
C.
In Tumpson, we applied the three-part Blessing test, albeit without the Gonzaga refinement, and found that the Faulkner Act conferred on the plaintiffs the substantive right of referendum-the right to place a recently enacted rent control ordinance before the voters for their approval or disapproval. Tumpson, 218 N.J. at 477-78, 95 A.3d 210. In that case, the Clerk of the City of Hoboken violated provisions of the Faulkner Act by refusing to accept the plaintiffs' referendum petition and place the challenged ordinance on the ballot. Id. at 471-72, 95 A.3d 210. Having exhausted their efforts with the City Clerk, the plaintiffs filed an action in lieu of prerogative writs seeking suspension of the effective date of the ordinance until the holding of a referendum. Id. at 459, 95 A.3d 210. They also sought relief under the New Jersey Civil Rights Act. Ibid.
In applying the Blessing test, we held: first, the Legislature, through the Faulkner Act, clearly intended to confer the right of referendum on the plaintiffs and voters of Hoboken; second, the right as enunciated in the statute was neither "vague" nor "amorphous," and its application was straightforward; and third, the **334 Clerk was unambiguously required to accept and file the referendum petition. Id. at 477-78, 95 A.3d 210. Moreover, because the Clerk's failure to file the petition gave rise to a cause of action, we determined that "by definition, the right of referendum is substantive in nature." Id. at 478, 95 A.3d 210.
The Clerk's refusal to accept the referendum petition essentially represented a dead end for the plaintiffs. Id. at 486, 95 A.3d 210. Although the filing of a referendum petition with the Clerk in Tumpson may at first glance appear to be merely procedural, the filing of the petition was inextricably intertwined with the vindication *557 of the plaintiffs' right of referendum. See id. at 468-71, 95 A.3d 210. Given that the Clerk had barred plaintiffs' efforts to realize that substantive right, the only remedy then available was through the court system. Id. at 478, 95 A.3d 210. Therefore, under the Civil Rights Act, the plaintiffs were entitled to vindicate the right of referendum by securing a judicial order placing the ordinance on the ballot for a vote by the residents of Hoboken and to obtain the statutory relief of attorney's fees. Ibid.
VI.
A.
We now apply the principles enunciated in Tumpson in determining whether, in violation of the Civil Rights Act, the Borough of Spring Lake violated Harz's right to be heard by the Planning Board.
The MLUL clearly conferred on Harz a right to be heard before the Planning Board on her appeal from the issuance of the zoning permit to her neighbor-a permit she claimed violated the Borough's land-use ordinance.[5] First, Harz is an "interested party"
**335 under the MLUL because she resides within the Borough and the zoning officer's issuance of the permit to the neighbor "affected" her right to use or enjoy her property. See N.J.S.A. 40:55D-4 ; Cox & Koenig § 26-1.1 at 559 (noting that "interested party" includes neighbor affected "by the grant of a building permit that will result in a structure that violates the zoning ordinance"). Second, N.J.S.A. 40:55D-72(a) provides an "interested party," such as Harz, the right to appeal a zoning officer's decision to the Planning Board, acting as a board of adjustment. Third, on the filing of the appeal, the zoning officer was required to "immediately transmit to the [Planning Board] all the papers constituting the record." Ibid. Fourth, N.J.S.A. 40:55D-70(a) empowers a board of adjustment to "[h]ear and decide appeals" taken from an administrative officer, such as a zoning officer. Last, the Planning Board was required to render a decision on Harz's appeal within 120 days. N.J.S.A. 40:55D-73.
The right to a review and decision by the Planning Board under this statutory scheme is not amorphous but rather self-evident. Additionally, the MLUL "unambiguously impose[s] a binding obligation on the [Board]" to provide Harz with the opportunity to be heard. See Tumpson, 218 N.J. at 475, 95 A.3d 210 (quoting Blessing, 520 U.S. at 340-41, 117 S.Ct. 1353 ). Last, because an interested party's right to be heard is inextricably tied to a party's property rights, we find that the MLUL right to be heard is substantive, not procedural. Moreover, it is a right that can be enforced through an action in lieu of prerogative writs. See id. at 478, 95 A.3d 210 ; see also N.J.S.A. 40:55D-18 (providing that "an interested party ... may institute any appropriate action or proceedings to prevent" erection of unlawful structure).
B.
Whatever may be the nature or the scope of the right to be heard on an appeal from a zoning officer's decision, the Borough did not violate a substantive right as envisaged under the Civil Rights Act. The Borough never deprived Harz of her right to **336 appeal from an adverse decision of the zoning officer or her right to be heard by the Planning Board. Certainly, after Harz filed her appeal from the issuance of *558 the First Permit, the zoning officer should have transmitted the record to the Planning Board, as the statute requires. The failure to do so, however, did not deprive Harz of a substantive right because she suffered no adverseness. The zoning officer made clear to Harz's neighbor that the current permit was no longer operative and an amended permit would have to be issued because of concerns raised by Harz. The Borough was responding to Harz, even if not to her full satisfaction.
Importantly, construction effectively ceased until the zoning officer issued the Second Permit. When Harz appealed from that permit, the zoning officer forwarded the record to the Planning Board. Although the Board scheduled a hearing, the cancellation of that hearing did not deprive Harz of a substantive right because-before the hearing-the Second Permit was rescinded based on her objections to her neighbor's proposed construction. In addition, the Borough entered a stop work order halting any construction on the neighbor's property. Again, Harz suffered no adverseness to any property right she possessed.
When the Third Permit issued, at first, Harz did not proceed with an appeal to the Planning Board pursuant to N.J.S.A. 40:55D-72(a) but instead filed a prerogative-writs action and Order to Show Cause in Superior Court aimed at enjoining the permit. That was her right, and one contemplated by N.J.S.A. 40:55D-18. Her success in obtaining a restraining order, however, did not signify that the Borough denied her the right to be heard. Indeed, after filing the prerogative-writs action, she filed an appeal with the zoning officer in the ordinary course. Nothing in the record suggests that had Harz not filed her action in Superior Court, the Planning Board would have denied her a hearing or that the prerogative-writs action was the catalyst for the hearing. For purposes of the Civil Rights Act, Harz did not exhaust the **337 statutory process for securing her right to be heard under the MLUL.
This case is unlike Tumpson, where the plaintiffs had exhausted all efforts to have the City Clerk validate their referendum petition and place the challenged ordinance on the ballot for a vote by the residents of Hoboken. The plaintiffs in Tumpson had reached the end of the line in seeking an administrative remedy with the City Clerk, and it was at that point that the plaintiffs were deprived of the right of referendum and pursued their civil rights claim in Superior Court. Here, if the zoning officer had permitted construction to proceed on Carter's property and blocked Harz's ability to appeal to and be heard by the Board, that scenario would be more comparable to what plaintiffs experienced in Tumpson. But Harz never reached a dead end in her efforts to be heard by the Planning Board, nor is there any evidence in the record that a direct appeal to the Board would have been futile.[6] In fact, in response to her appeal, the Planning Board conducted three days of hearings and ruled, in large measure, in favor of Harz.
Cast in that light, Harz did not prove that the Borough deprived her of the right to be heard, even under the indulgent summary judgment standard that requires the evidence to be viewed in the light most favorable to plaintiff.[7]
**338 *559 VII.
For the reasons stated above, we reverse the judgment of the Appellate Division, which reinstated Harz's civil rights claim against the Borough, and now dismiss that claim.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.

The board of adjustment typically has the authority to "[h]ear and decide" appeals taken from the decisions of zoning officers. See N.J.S.A. 40:55D-70(a). However, in certain municipalities, such as the Borough of Spring Lake, the planning board exercises the functions of the board of adjustment pursuant to N.J.S.A. 40:55D-25(c).

In the case of an "applicant," the board's failure "to render a decision within such 120-day period," absent the applicant's consent, "shall constitute a decision favorable to the applicant." N.J.S.A. 40:55D-73(b). An "applicant" is "a developer submitting an application for development." N.J.S.A. 40:55D-3.

The record before us does not reveal the nature of any proceedings held relating to the Order to Show Cause.

We note that unlike 42 U.S.C. § 1983, which protects against "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws," the Civil Rights Act protects only against the deprivation of "substantive rights, privileges or immunities secured by the Constitution or laws of this State," N.J.S.A. 10:6-2(c). Tumpson, 218 N.J. at 477, 95 A.3d 210. In short, the Civil Rights Act does not provide a remedy for the deprivation of procedural rights.

This case does not present an occasion for this Court to limn the nature or the scope of such a hearing, which may depend on the mundane or unique circumstances of the matter presented to the board of adjustment or planning board.

The record does not suggest that the Borough engaged in a course of conduct to wear down Harz by repeated rescissions and reissuances of permits, rendering futile her efforts to appeal. We therefore need not address a scenario of bad faith efforts to deliberately burden an interested party's right to appeal.

Given our determination that Harz does not have a state civil rights claim, we decline to reach the respondeat superior arguments about whether Harz's claims actually lie against the municipal actors or the Borough. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (concluding that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983"). Moreover, as noted by the Appellate Division, these arguments were not raised below with the trial court.