**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5360-18T2

JOHN PAFF,

 Plaintiff-Appellant,

v.

TRENTON BOARD OF
EDUCATION, GENE BOUIE,
GERALD TRUEHART,
ADDIE DANIELS-LANE, FIAH
KWESSEU, HEATHER WATSON,
LUCY VANDENBERG, and
YOLANDA MARRERO-LOPEZ,

 Defendants-Respondents.

_____

> Submitted October 14, 2020 – Decided November 13, 2020
>
> Before Judges Yannotti and Natali.
>
> On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2241-18.
>
> Donald M. Doherty, Jr., attorney for appellant.
>
> Adams Gutierrez & Lattiboudere, attorneys for respondents (Adam S. Herman, of counsel and on the brief).

Pashman Stein Walder Hayden, P.C., attorneys for amicus curiae American Civil Liberties Union of New Jersey Foundation (CJ Griffin, of counsel and on the brief).

PER CURIAM

Plaintiff appeals from a final judgment entered by the Law Division on July 12, 2019, which, among other things, dismissed his claim under the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-2, and denied his application under the NJCRA for attorney's fees. We affirm.

I.

On September 24, 2018, the Trenton Board of Education (Board) held a public meeting, which began at 5:36 p.m. After addressing various matters, the Board adopted a resolution pursuant to the Open Public Meetings Act (OPMA or the Act), N.J.S.A. 10:4-6 to -21, which authorized the Board to exclude the public from the meeting to discuss a proposed Memorandum of Understanding (MOA) with the Trenton Educational Secretaries Association (TESA), as well as certain other matters, including the revised and the Completed Merit Goals Submission Form (CMGSF).

The record shows that at 8:44 p.m., the Board adjourned the public meeting and went into executive session. The public meeting resumed at 10:46

p.m., at which time the Board voted on resolutions to approve: the MOA with the TESA, an invoice to reimburse an arbitrator, and a fit-for-duty exam for a staff member. The Board adjourned the public meeting at 10:50 p.m. The Board then went into executive session for the purpose of discussing the CMGSF for the Superintendent of Schools, Dr. Frederick H. McDowell, Jr. The public meeting resumed at 11:45 p.m. The Board then voted to transmit the Superintendent's CMGSF to the County Office of the New Jersey Department of Education (NJDOE). The meeting adjourned at 11:45 p.m.

On October 26, 2018, plaintiff filed a two-count verified complaint in the Law Division. Plaintiff named the Board and the members of the Board who participated in the September 24, 2018 meeting as defendants.

In count one of his complaint, plaintiff alleged defendants violated the OPMA because the Board's agenda did not reference the payment of a merit bonus to the Superintendent. Plaintiff asserted that the Board made no "clear" statement that the Superintendent's bonus pay was an issue that would be discussed in the first executive session on September 24, 2018.

Plaintiff further alleged the Board did not adopt another resolution before it went into the second executive session and did not state that the discussion of the Superintendent's CMGSF related to the payment of a merit bonus. He

claimed there was a "strong likelihood" the Board voted on the Superintendent's CMGSF in the second executive session.

In count two, plaintiff asserted a claim under the NJCRA. He alleged that under the OPMA, he and the public had a right to have adequate notice of public meetings and that this was a substantive right secured under the laws of New Jersey. Plaintiff alleged he and the public were deprived of this right because defendants failed to provide adequate notice of the topics to be discussed at the meeting.

Plaintiff alleged that the Board failed to "clarify the cryptic references" to the CMGSF. He claimed the Board "deliberately obfuscate[d]" the effect of approving such a form, which was to authorize the payment of a $25,000 merit bonus for the Superintendent. Plaintiff asserted that a violation of the OPMA was also a violation of the NJCRA.

Plaintiff sought, among other relief, a judgment voiding the action taken by the Board with regard to the submission of the Superintendent's CMGSF to the County Office of the NJDOE; declaring defendants had violated the OPMA; compelling defendants to change their agenda and public notice practices; declaring violations of the OPMA may be addressed under the NJCRA;

4

enjoining further violations of the OPMA, and awarding plaintiff attorney's fees and costs pursuant to the NJCRA.

## II.

Judge Mary C. Jacobson heard oral argument on January 24, 2019. The judge ordered defendants to provide further information regarding the Superintendent's application for a merit pay bonus. The judge also directed defendants to provide the Superintendent notice of the relief plaintiff was seeking and afford him the opportunity to intervene in the action. The Superintendent did not thereafter seek to intervene. The judge granted the American Civil Liberties Union of New Jersey Foundation (ACLU-NJ) leave to participate in the matter as amicus curiae.

On July 12, 2019, Judge Jacobson rendered a decision from the bench. The judge found that the Board violated the OPMA by failing to provide the public with adequate notice, in the manner prescribed by N.J.S.A. 10:4-8(d), that it would be discussing the payment of a merit bonus to the Superintendent at the September 24, 2018 meeting.

The judge rejected the Board's assertion that it was well-known that the Board would be considering the Superintendent's merit goals and bonus pay. The judge found that the appropriate remedy for the violation was to void the

Board's approval of the Superintendent's merit bonus and to remand the matter to the Board for reconsideration of the payment of the bonus "at a properly noticed meeting that complies with the" OPMA.

The judge also found that there was no basis for the award of prospective injunctive relief. The judge noted that in 2019, the Board had posted and submitted its schedule of regular meetings for the year to two newspapers, as permitted by N.J.S.A. 10:4-18, thereby obviating the need for further notice of any meeting pursuant to N.J.S.A. 10:4-8(d).

Judge Jacobson then addressed plaintiff's claim under the NJCRA. The judge noted that the only relief plaintiff was seeking under the NJCRA was the award of attorney's fees. The judge found that in the OPMA, the Legislature had created a cause of action with specific remedies, which do not include the award of attorney's fees to the prevailing party.

The judge stated that by its enactment of the NJCRA, the Legislature did not intend to supplement the remedies available under the OPMA and allow for the award of attorney's fees. Therefore, the judge dismissed plaintiff's claim under the NJCRA and denied with prejudice plaintiff's application for attorney's fees under the NJCRA.

6

The judge memorialized her decisions in a final judgment dated July 12, 2019. This appeal followed.

### III.

On appeal, plaintiff argues the trial court erred by finding that the NJCRA does not permit the award of attorney's fees to a party who prevails on a claim based on a violation of the OPMA. Plaintiff contends that in the NJCRA, the Legislature intended to supplement the remedies available to litigants under the OPMA.

The issue raised on appeal is one of statutory interpretation and requires that we construe the NJCRA and the OPMA. Therefore, we undertake de novo review of the trial court's decision that a party who prevails on a claim under the OPMA may seek attorney's fees under the NJCRA. In addressing that issue, we owe no deference to the trial court's legal determination. Tumpson v. Farina, 218 N.J. 450, 467 (citing Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.-Liab. Ins. Guar. Ass'n, 215 N.J. 522, 535 (2013)).

We begin our analysis with the relevant provisions of the NJCRA. The NJCRA states in relevant part that

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or

7

immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

[N.J.S.A. 10:6-2(c) (emphasis added).]

In addition to an action for damages and injunctive relief, the NJCRA permits the court to "award the prevailing party reasonable attorney's fees and costs." N.J.S.A. 10:6-2(f).

The NJCRA was intended to provide a remedy for the violation of substantive rights established under the New Jersey Constitution and state law. Tumpson, 218 N.J. at 474. The NJCRA was "intended to expand the remedies already provided to victims of bias and discrimination under [the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49] to citizens whose other substantive rights were not adequately protected under existing law." Ibid.

In determining whether New Jersey's Constitution and laws confer a substantive right on a class of individuals, our Supreme Court has considered the interpretation given to the parallel provisions of the Federal Civil Rights Act, 42 U.S.C.A. § 1983. Ibid. The Court has observed that like the NJCRA, Section 1983 is not a source of substantive rights but is instead a vehicle by

which rights established under Federal law may be vindicated.  Id. at 475 (citing Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617-18 (1979)).

In Tumpson, the Court applied the test established in Blessing v. Freestone, 520 U.S. 329, 340-41 (1997), for determining whether a statute provides a class of individuals in a particular case with a substantive right.  Id. at 475-76.  The Court later refined this test in Harz v. Borough of Spring Lake, 234 N.J. 317, 331 (2018).  The test requires courts to consider, in making that determination, whether: (1) the statute was intended to confer a right on an individual; (2) the right is "so 'vague [or] amorphous' that its enforcement would strain judicial competence"; and (3) the law unambiguously imposes a binding obligation on the State or its political subdivisions.  Ibid. (quoting Tumpson, 218 N.J. at 475) (citing Gonzaga Univ. v. Doe, 536 U.S. 273, 283-84 (2002)).

Here, the trial court found that the OPMA establishes substantive rights under this test.  We agree.  Among other things, the Act states that the public has the right "to be present at all meetings of public bodies, and to witness in full detail all phases of the deliberation . . . [and] to have adequate advance notice of and the right to attend all meetings of public bodies at which any business affecting the public is discussed or acted upon in any way . . . ." N.J.S.A. 10:4-7.  Furthermore, the public's rights under the Act are not vague

and amorphous and the enforcement of such rights would not strain judicial competence.  In addition, the Act creates unambiguous obligations on the part of public bodies that are subject to its requirements.

Since the OPMA creates substantive rights under the test enunciated in Tumpson and Harz, we must determine whether enforcement of those rights under the NJCRA is compatible with the OPMA.  In Tumpson, the Court explained that even if a federal statute is found to create an individual right, this only gives rise to a rebuttable presumption that the right is enforceable under Section 1983.  Tumpson, 218 N.J. at 475 (citing Blessing, 520 U.S. at 341).

Indeed, Congress may expressly or impliedly foreclose a remedy under Section 1983 "by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under [Section] 1983." Ibid. (quoting Blessing, 520 U.S. at 341).  The Tumpson Court applied these principles in determining whether the NJCRA applies to the deprivation of substantive rights established under New Jersey law.

In Tumpson, the Court noted that under the Faulkner Act, the public had a right of referendum to approve or disapprove any ordinance passed by a governing body in a Faulkner Act municipality.  Id. at 468 (citing N.J.S.A. 40:69A-185 to -190).  The Court found that the power of referendum under

N.J.S.A. 40:69A-185 is a substantive right conferred upon all voters in the municipality, and enforcement of this right would not "strain[] judicial competence." Id. at 478. Moreover, the right is substantive, not procedural, because a City Clerk's failure to file the referendum petition to allow a vote on an ordinance gives rise to a cause of action to enforce the right. Ibid.

The Tumpson Court further found that nothing in the NJCRA "remotely suggests" that the Legislature intended its remedies would not apply to enforcement of the right of referendum. Id. at 478-79. The Court emphasized that if the Legislature intended to carve out this statutory area, "presumably the Legislature would have said so." Id. at 479 (citing DiProspero v. Penn, 183 N.J. 477, 493 (2005)).

The Court held that one of "the most powerful remedies" of the NJCRA is the award of attorney's fees to the prevailing party. Ibid. (citing N.J.S.A. 10:6-2(f)). The Court noted that a successful litigant in an action to enforce the right of referendum usually would not obtain money damages and the average citizen seeking to enforce that right may not be able to afford to litigate the issue. Id. at 480. The Court held that the NJCRA was intended to apply to such a case. Ibid.

In this case, Judge Jacobson correctly found that in the OPMA, the Legislature had created specific remedies for violations of the law and there was no indication the Legislature intended to supplement those remedies by allowing claims to be brought under the NJCRA for deprivations or threatened deprivations of rights under the Act. The OPMA provides in pertinent part that any action taken by a public body at a meeting that does not conform to the Act's requirements "shall be voidable in a proceeding in lieu of prerogative writ" that may be brought in the Superior Court. N.J.S.A. 10:4-15(a).

Moreover, "[a]ny party, including any member of the public, may institute" such a proceeding. N.J.S.A. 10:4-15(b). If the court finds "that the action was taken at a meeting which does not conform to the provisions of [the] act, the court shall declare such action void." Ibid.

In addition, the Act states that "any person . . . may apply to the Superior Court for injunctive orders or other remedies to insure compliance with the provisions of [the] act and the court shall . . . provide such remedies as shall be necessary to insure compliance with the provisions of [the] act." N.J.S.A. 10:4-16. The Act also provides limited monetary penalties for persons who knowingly violate any provision of the Act. N.J.S.A. 10:4-17. The Act does not provide for the award of attorney's fees and costs to the prevailing party.

Thus, the OPMA establishes a comprehensive statutory scheme with limited remedies that is clearly intended to cover the field. We are not convinced the Legislature intended to supplement that statutory scheme by applying the NJCRA to deprivations or threatened deprivations of rights established under the OPMA.

As we noted previously, the NJCRA provides that a person who has been deprived of a substantive right secured by New Jersey's Constitution or laws, or whose substantive right has been interfered with or threatened to be interfered with, by a person acting under color of law, "may bring a civil action for damages and for injunctive or other appropriate relief . . . ." N.J.S.A. 10:6-2(c).

The NJCRA states that any party to such an action may seek a trial by jury. N.J.S.A. 10:6-2(d). The NJCRA further provides that

> [a]ny person who deprives, interferes or attempts to interfere by threats, intimidation or coercion with the exercise or enjoyment by any other person of any substantive due process or equal protection rights, privileges or immunities secured by . . . the Constitution or laws of this State is liable for a civil penalty for each violation. The court or jury, as the case may be, shall determine the appropriate amount of the penalty. Any money collected by the court in payment of a civil penalty shall be conveyed to the State Treasurer for deposit into the State General Fund.
>
> [N.J.S.A. 10:6-2(e).]

The court also may award the prevailing party in an action under the NJCRA reasonable attorney's fees and costs "[i]n addition to any damages, civil penalty, injunctive or other appropriate relief . . . ." N.J.S.A. 10:6-2(f).

In our view, the broad remedies available under the NJCRA are entirely inconsistent with the comprehensive statutory scheme in the OPMA. The Act does not provide for the award of damages, which is permitted under the NJCRA. The Act provides for the grant of limited injunctive relief and other remedies to ensure prospective compliance with the Act. N.J.S.A. 10:4-16.

The injunctive relief available under the NJCRA is not limited in the manner described in the OPMA. Furthermore, under the Act, the monetary penalties that can be assessed for OPMA violations are strictly limited, there is no right to a jury trial, and the penalties are recoverable in a summary proceeding in the Superior Court. N.J.S.A. 10:4-17.

Plaintiff argues, however, that the award of counsel fees would complement the remedies available under the OPMA. The ACLU-NJ agrees and contends there is nothing in the NJCRA that suggests the Legislature did not intend the NJCRA remedies would apply to deprivations or threatened deprivations of rights under the OPMA. We disagree.

14

The limited remedies available under the OPMA indicate that the Legislature intended to foster compliance with the open meeting and public notice requirements without unduly burdening public bodies and their members with unlimited monetary penalties and awards of attorney's fees and costs. Applying the remedies under the NJCRA to violations of the OPMA would not complement the OPMA. It would substantially alter a comprehensive legislative scheme. The trial court correctly determined that the Legislature did not intend such a result when it enacted the NJCRA.

We have considered the other arguments raised by plaintiff and the ACLU-NJ. We conclude those arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5360-18T2