**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3560-21

JEREMY BARATTA,

    Plaintiff-Appellant,

v.

CITY OF PERTH AMBOY,

    Defendant-Respondent.

_____

Submitted October 16, 2023 – Decided September 6, 2024

Before Judges Gilson and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6116-20.

Mikita & Roccanova, LLC, attorneys for appellant (William P. Mikita, Jr., on the brief).

Hanrahan Pack, LLC, attorneys for respondent (Thomas B. Hanrahan, of counsel and on the brief; Kathy A. Kennedy, on the brief).

PER CURIAM

Plaintiff Jeremy Baratta appeals from the May 27, 2022 order of the Law Division granting summary judgment to defendant City of Perth Amboy and dismissing with prejudice Baratta's complaint alleging that the city retaliated against him for his political speech in violation of the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2, and federal law.  We affirm.

I.

Baratta is a politically active resident of Perth Amboy.  He is a vocal critic of former Perth Amboy Mayor Wilda Diaz, members of her administration, and her political allies.  Baratta served as the chairman and treasurer of the campaign of an opponent of Diaz in the 2016 mayoral election and his company is a plaintiff in a lawsuit against the city and one of Diaz's political allies concerning access to public records.  He alleges that his opposition to Diaz is well known and has garnered local press coverage.

Baratta is also a disabled veteran.  He owns and operates a vehicle with license plates bearing the designation "DV," identifying his status as a disabled veteran.  Pursuant to N.J.S.A. 39:4-207.10, Baratta is exempt from paying municipal parking meter fees when he parks a vehicle bearing "DV" plates.[1]

---

[1] The exemption does not apply when a vehicle has been parked in one location for more than twenty-four hours.  N.J.S.A. 39:4-207.10.  The exception is not at issue here.

A-3560-21

On nine occasions, from March 7, 2016, to August 26, 2019, Perth Amboy parking enforcement officers issued Baratta summonses for parking meter violations even though his vehicle displayed license plates with the "DV" designation.  Baratta acknowledges that all of the summonses ultimately were dismissed by the municipal court without the need for him to appear in court or retain an attorney.  Although he did not incur any attorney's fees, Baratta alleged that he spent many hours addressing the summonses and, as a result of receiving the summonses, suffered extreme emotional distress.[2]

In 2020, Baratta filed an amended complaint in the Law Division alleging: (1) the city issued the summonses at the direction of Diaz as retaliation for his political activity and to chill his future speech in violation of the State Constitution and the NJCRA; and (2) the city engaged in a policy, pattern, or custom of unlawful activity that violated his federal and state constitutional right to free speech and to be free from retaliation for that speech.  Baratta sought damages, an injunction against issuance of summonses for parking meter

---

[2] Although Baratta alleged that on one occasion the municipal court ordered the suspension of his driver's license, he failed to produce evidence supporting this allegation.  At his deposition, Baratta testified that in 2016, he received an order from the municipal court stating that his license was going to be suspended for failure to pay one of the tickets he received, but conceded the ticket was dismissed and the suspension never took place.

A-3560-21

violations when he has satisfied the statutory requirements for an exemption, attorney's fees, and costs.

After discovery, the city moved for summary judgment. On May 27, 2022, the trial court issued an oral opinion granting the motion.[3] The court found that in response to the summary judgment motion, Baratta produced no evidence on which a jury could conclude that the summonses were issued to him in retaliation for his political speech or to chill his future speech. As the court explained,

> [t]he [p]laintiff in his [d]eposition really just reiterates what is in the [c]omplaint, that by virtue of the fact that he was issued the tickets when he shouldn't have been, and that he was a vocal critic, therefore [they were] issued in order to quell . . . his free speech.

The court distinguished the motion record from the facts before the court in Garcia v. City of Trenton, 348 F.3d 726 (8th Cir. 2003), on which Baratta relied. In Garcia, the Eighth Circuit held that issuance of parking tickets could constitute retaliation for political speech. In that case, over a nine-month period,

---

[3] It appears that prior to discovery the trial court decided that Baratta's claims based on the first seven summonses were time barred. We have not been provided with a copy of that decision or the accompanying order. The trial court's decision on the city's summary judgment motion, while noting that the claims based on the first seven summonses are time barred, also refers to all nine of the summonses in its analysis of Baratta's claims.

Garcia regularly parked her car in front of her store in violation of a parking ordinance limiting parking to two hours without receiving a ticket. Id. at 728. After she engaged in a "heated exchange" with the Trenton, Missouri mayor about the city's failure to enforce an ordinance prohibiting bicycle riding on the sidewalk in front of her shop, the mayor "told . . . Garcia that the two-hour time limit would be enforced against her, and that he was taking this action because of her complaints about the bicycling ordinance." Ibid. Several hours later, Garcia received the first of several tickets for violating the parking ordinance. Ibid. The circuit court found that a jury could reasonably infer that the mayor's actions constituted retaliation for Garcia's political activity in violation of the First Amendment. Id. at 729.

Here, the trial court observed, the record contains no evidence that the summonses issued to Baratta were in retaliation for his political activity. In Garcia, the court noted, the mayor's statement was evidence of a causal connection between Garcia's speech and the issuance of the parking tickets. However, the court continued, "[w]e know that in this particular case we don't have certainly any statements that were made by any of the parties to this case, the Mayor, or any of the employees that would even come close to a statement of we're going to be ticketing" Baratta as retaliation for his political speech.

5

The court also considered the timing of the summonses issued to Baratta:

> [T]he tickets were issued over a three-year period of time. There were nine tickets. The [d]eposition testimony of . . . Baratta is not exact but seems to indicate that there was a brouhaha going on a one point and that's why the tickets might have been issued. Candidly, I don't know whether or not that's enough to be able to say that they are in direct retaliation when he's not able to state what was going on, other than there was a general brouhaha.
>
> And . . . there were a couple of tickets that were issued in October, and a couple tickets that were issued in November, which was around the election. But again, there is no meat that is being put on those bones by . . . Baratta in his [d]eposition, other than, well, there was an election going on . . . or there was something that was going on in the Planning Board. There's certainly noting direct and there is nothing that jumps out to the [c]ourt on the tickets without any other testimony to indicate that they were timed to any particular event, or that they were in response to any particular event.

The court also found that the record contained no evidence that the parking enforcement officers who issued the summonses knew Baratta or were aware that the vehicle at issue belonged to him. The court noted that in his deposition, Baratta stated that he would not recognize the parking enforcement officers "if they were standing next to him." In addition, the court found that Baratta produced no evidence that Diaz was aware that the summonses were issued to Baratta.

6

Finally, the court found that the city dismissed each of the summonses without the need for Baratta to appear in court or retain an attorney. The court reasoned:

> How can I find retaliatory conduct under those circumstances? Respectfully, I can't. There is nothing on the front end, with regard to timing. There's nothing on the front end with regard to statements. And on the back end, it appears that Perth Amboy, on their own, when they were aware of what was going on, took care of these tickets.

The court, therefore, concluded that the city was entitled to summary judgment with respect to Baratta's NJCRA claims.

With respect to Baratta's policy, pattern, and custom claims, the court found:

> Their pattern and practice really needs to rise to the level . . . that is institutionalized and approved by the governing body. How can the [c]ourt come to that conclusion when the governing body is dismissing the tickets? So, they're clearly not sanctioning this behavior. It appears that they are dismissing it. Or [they are] trying to correct it.
>
> There's obviously also no testimony whatsoever with regard to the training or experience of these officers, absolutely no testimony in the record that would give the [c]ourt context, meaning . . . how many tickets were issued . . . over a year a three-year period . . . . [H]ow many are being issued to disabled veterans . . . to be able to show that they're being targeted. There is nothing, quite frankly . . . .

7

. . . .

And without more, I can't allow this case to go to a jury.

A May 27, 2022 order memorializes the court's decision.

This appeal follows. Baratta argues the Law Division erred when it concluded that he failed to produce evidence raising a genuine issue of material fact with respect to: (1) whether the summonses were issued in retaliation for his political activity in violation of the NJCRA; and (2) whether the city engaged in a policy, pattern, or custom of unlawful activity.[4]

## II.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,

---

[4] Baratta also argues that the trial court erred when it denied his motion to amend the complaint to substitute the names of two parking enforcement agents for "John Doe" parking enforcement agents. Baratta's brief does not identify the date on which the court denied the motion to amend and he did not include in his appendix a copy of the order denying the motion. Baratta's notice of appeal lists only the May 27, 2022 order granting the city's motion for summary judgment. We do not consider orders not identified in the notice of appeal. See R. 2:5-1(f)(2)(ii) (stating that in civil actions, the notice of appeal "shall . . . designate the judgment, decision, action, or rule, or part thereof, appealed from . . . ."); Fusco v. Bd. of Educ., 349 N.J. Super. 455, 461-62 (App. Div. 2002).

A-3560-21

show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the trial court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

The NJCRA provides in relevant part:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.
>
> [N.J.S.A. 10:6-2(c).]

In addition to damages, the prevailing party may be awarded reasonable attorney's fees and costs.  N.J.S.A. 10:6-2(f).

The Legislature modeled the NJCRA on the Federal Civil Rights Act, 42 U.S.C. § 1983, which establishes civil actions for the deprivation of federal constitutional and statutory rights.  Tumpson v. Farina, 218 N.J. 450, 474 (2014).  That statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .
>
> [42 U.S.C.A. § 1983.]

Thus, in interpreting the NJCRA, New Jersey courts often look to federal cases analyzing Section 1983.  See Tumpson, 218 N.J. at 474 (cases interpreting "Section 1983 may provide guidance in construing our Civil Rights Act.").  The NJCRA also "is intended to provide what Section 1983 does not: a remedy for the violation of substantive rights found in our State Constitution and laws." Harz v. Borough of Spring Lake, 234 N.J. 317, 330 (2018) (quoting Tumpson, 218 N.J. at 474).

To establish that issuance of the summonses constituted retaliation for Baratta's political speech, he must show that he (1) "engaged in protected activity, (2) that defendant['s] retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Where, as here, the question does not turn on whether the plaintiff engaged in protected activity or whether the defendant engaged in the conduct alleged, "but rather whether there was a causal relationship between the two . . . [t]o establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Ibid. "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." Ibid. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)).

We agree with the trial court that Baratta failed to produce evidence raising a genuine issue of material fact that issuance of the summonses were causally connected to his political activity. Viewed in the light most favorable

11

to Baratta, the record simply does not support an inference that the parking enforcement officers intentionally issued invalid parking summonses at the direction of Diaz or her allies as retaliation for Baratta's political activities or to chill his speech in the future. Baratta produced no evidence of a causal connection between his political activity and the summonses. His speculation to the contrary is insufficient to preclude entry of summary judgment in favor of the city. See Maher v. N.J. Transit Rail Operations, 125 N.J. 455, 477-78 (1991).

We also agree with the trial court's conclusion that Baratta failed to produce evidence supporting his claim that the city engaged in a policy, pattern, or custom of unlawful activity that violated his federal and state constitutional rights, as recognized in Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978). A governmental policy can be established "when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict." McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) (alteration in original) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and

12

well-settled' as to virtually constitute law." Ibid. (quoting Andrews, 895 F.2d at 1480). "Custom requires proof of knowledge and acquiescence by the decisionmaker." Ibid. "In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).

Baratta produced no evidence that Diaz or any other city official approved and acquiesced in a policy or well-settled custom of unlawfully ticketing Baratta in particular or disabled veterans in general. To the contrary, the record establishes that when city officials became aware that Baratta had been issued summonses for parking for which he was exempt from meter fees, those officials caused the summonses to be dismissed without the need for Baratta to appear in court or retain counsel.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3560-21