**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3083-22

PATRICK DAWSON, and
BRIAN DUNKLEY,

     Plaintiffs-Appellants,

v.

PHILIP MURPHY, Governor, in
his official capacity, ELIZABETH
MAHER MUOIO, New Jersey State
Treasurer, in her official capacity,
and SHOAIB KHAN, Director of
Investments, in his official capacity,

     Defendants-Respondents.

_____

Submitted October 9, 2024 – Decided October 29, 2024

Before Judges Smith and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3623-22.

The Riback Law Firm LLC, attorneys for appellants (Willam A. Riback, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondents (Melissa H. Raksa, Assistant Attorney

General, of counsel; Amy Chung, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiffs Patrick Dawson and Brian Dunkley appeal from an April 28, 2023 order transferring this matter to us as having exclusive jurisdiction and denying their cross-motion to amend their complaint. In the alternative, plaintiffs seek: (1) declaratory relief that the New Jersey Constitution guarantees a right to a stable environment and (2) remand for review of and possible divestment from the New Jersey Pension Fund's ("Fund") investments in the 200 largest publicly traded oil and gas companies, which plaintiffs maintain violate that constitutional right. For the reasons that follow, we affirm the trial court's order and decline to order declaratory relief or a remand.

I.

Plaintiff Patrick Dawson is a beneficiary of the Fund, and Plaintiff Brian Dunkley is a resident of Atlantic County. Defendants are Governor Philip D. Murphy, who plaintiffs allege has the authority to issue executive orders; State Treasurer Elizabeth Maher Muoio, who plaintiffs allege has "policy authority over the State's cash savings, debt[,] and investments[,]" and State Director of Investments Shoaib Khan, who plaintiffs allege has "authority to allocate the Pension Fund portfolio . . . ."

2

In October 2022, on behalf of the State, Attorney General Matthew Platkin, along with the New Jersey Department of Environmental Protection ("NJDEP"), and the Division of Consumer Affairs brought civil suit against Exxon Mobil, British Petroleum, Chevron, ConocoPhillips, Shell, the American Petroleum Institute, and other related entities alleging that their actions have caused destruction of the environment ("Platkin Suit"). The Platkin Suit enumerated several causes of action: failure to warn, negligence, impairment of the public trust, trespass, public and private nuisance, and two violations of New Jersey's Consumer Fraud Act.

The Fund includes seven public pension systems and was valued at $95.7 billion as of June 2021. Plaintiffs allege the State uses these assets to invest in "the 200 largest oil and gas producing companies" ("investments"), even though some of those entities are defendants in the Platkin Suit. As a result, plaintiffs initiated suit in the Law Division. They characterized many of the factual allegations in the Platkin Suit as "admissions" by the State that: fossil fuel emissions pose an environmental threat; the cause of the emissions are the entities in which the State has an ownership interest via the pension fund; and that ownership interest harms the assets of the public trust and the lives of New Jersey citizens, broadly. In their initial complaint, plaintiffs pursued two

3

theories: the State violated the Public Trust Doctrine by investing in the very companies it alleged were engaged in the destruction of public assets; and breach of duty to pension beneficiaries.

Defendants moved for: dismissal with prejudice under Rules 4:6-2(a) and 2:2-3(a)(2) or, in the alternative, for transfer to us under Rule 1:13-4(a); and dismissal of Governor Murphy and Treasurer Maher Muoio as defendants under Rule 4:6-2(e). Plaintiffs opposed, and cross-moved for leave to amend their complaint. The proposed amendment sought "to bring a claim exclusively under the New Jersey Constitution through the New Jersey Civil Rights Act" ("NJCRA"). The amendment alleged New Jersey was a market participant or alter ego for the 200 companies, whose affirmative aggregate acts violated the plaintiffs' rights as guaranteed by the New Jersey Constitution.

The trial court decided the motions on April 28, 2023. To the extent the court had jurisdiction to decide plaintiffs' motion for leave to amend, it denied such leave. The court found a substantive due process claim under the NJCRA required plaintiffs to establish both state action and an identified "right[,] privilege[,] or immunity secured" by the constitution which was violated in some way that shocked the conscience or offended notions of fairness and human dignity. The court found plaintiffs proposed amended complaint did not set

4

forth such a claim because no right to a stable climate is affirmatively granted in the New Jersey Constitution and our jurisprudence has not recognized such a right. Finally, the court determined that "passive investments in oil and gas companies do not rise to the level of a substantive due process violation under the standard of shocking the conscience."[1] Pursuant to our exclusive jurisdiction under Rule 2:2-3(a)(2), the court then transferred the matter to us.

This appeal followed. Plaintiffs argue they should have been granted leave to amend their complaint to bring a claim under the NJCRA, which would be heard in the Law Division. In the alternative, if we exercise jurisdiction over the matter as a challenge to a final agency decision, plaintiffs argue they should be granted the declaratory and injunctive relief they sought in the original complaint.

II.

---

[1] The court also denied defendants' motion to dismiss Governor Murphy and Treasurer Maher Muoio as individual defendants, to the extent it had jurisdiction to do so. The court was satisfied the original complaint adequately set forth a claim against those defendants because "it could be found that the Governor and Treasurer both had at least supervisory roles over the Director, and therefore, the investments." Defendants do not appeal from this portion of the trial court's order.

5

"We review a trial court's decision to grant or deny a motion to amend the complaint for abuse of discretion." Port Liberte II Condo. Ass'n, Inc. v. New Liberty Residential Urb. Renewal Co., 435 N.J. Super. 51, 62 (App. Div. 2014) (citing Kernan v. One Wash. Park Urb. Renewal Assocs., 154 N.J. 437, 457 (1998)). However, the standard of review in "construing the meaning of a constitutional provision . . . is de novo. . . ." Gormley v. Wood-El, 218 N.J. 72, 87 (2014). No deference is afforded to "interpretative conclusions of the trial court . . . ." Ibid.

Our role in reviewing all administrative action is generally limited to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

6

"When an agency's decision meets those criteria, then a court owes substantial deference to the agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. 19, 28 (2007). Decisions "made by an administrative agency entrusted to apply and enforce a statutory scheme" are reviewed "under an enhanced deferential standard." East Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022).

## A.

Plaintiffs first argue they should have been granted leave to amend their complaint under the NJCRA to include a substantive due process violation of a fundamental right under Article 1, Paragraph 1 of the New Jersey Constitution. They cite the federal case Juliana v. United States, 217 F. Supp. 3d 1224 (D. Or. 2016), as "rel[ying] on New Jersey law in finding a fundamental right to a stable environment . . . ." Plaintiffs urge this Court to find an implied right to a stable environment "under a penumbra of rights theory" as the Juliana court found such an implied right in the Fifth Amendment to the United States Constitution.

Whether to grant a party leave to amend pleadings is left to the discretion of the trial court "in light of the factual situation existing at the time each motion is made." Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006) (citing Interchange State Bank v. Rinaldi, 303 N.J. Super. 239, 256 (App. Div. 1997)).

A-3083-22

While leave to amend a pleading is generally liberally granted under Rule 4:9-1, denial is appropriate "if the amended pleading itself is without legal merit, that is, if the amendment as proposed would be futile." Notte, 185 N.J. at 495.

The NJCRA permits civil action "for damages and for injunctive or other appropriate relief" to be brought by those alleging deprivation of "substantive rights, privileges[,] or immunities secured by the Constitution or laws of this State . . . ." N.J.S.A. 10:6-2(c). Substantive rights may arise from the plain language of the federal and state constitutions, from constitutional jurisprudence, or may be conferred by statute. Harz v. Borough of Spring Lake, 234 N.J. 317, 332 (2018).

Plaintiffs argue they have a viable substantive due process claim because their proposed amended complaint seeks to "vindicate their rights under the Public Trust Doctrine . . . ." We consider their argument.

Where a putative right asserted is not enumerated in the plain language of the state constitution, as plaintiffs here concede, finding that one nonetheless exists involves two-steps. "First, the asserted fundamental liberty interest must be clearly identified. Second, that liberty interest must be objectively and deeply rooted in the traditions, history, and conscience of the people of [New Jersey]."

Lewis v. Harris, 188 N.J. 415, 435 (2006) (citations omitted).  Further, "[h]ow the right is defined may dictate whether it is deemed fundamental."  Ibid.

"The [P]ublic [T]rust [D]octrine acknowledges that the ownership, dominion[,] and sovereignty" over certain natural resources "is vested in the State in trust for the people."  Matthews v. Bay Head Improvement. Ass'n, 95 N.J. 306, 312 (1984).  "The genesis of this principle is found in Roman jurisprudence, which held that 'by the law of nature' 'the air, running water, the sea, and consequently the shores of the sea' were 'common to mankind.'"  Id. at 316-17 (quoting Justinian, Institutes 2.1.1 (T. Sandars trans. 1st Am. ed. 1876)).  The Public Trust Doctrine has a long legal history in our state, since 1821, when our Supreme Court was "the first in the United States to verify its application in the New World in Arnold v. Mundy, 6 N.J.L. 1 (Sup. Ct. 1821) . . . ."  Raleigh Ave. Beach Ass'n v. Atlantis Beach Club, Inc., 185 N.J. 40, 63 (2005) (Wallace, Jr., J., dissenting) (quoting Encyclopedia of New Jersey 665-66 (Maxine N. Lurie & Marc Mappen eds., 2004)).

Since then, the Public Trust Doctrine has been expanded to resolve disputes over public access to municipality-owned beaches.  See, e.g., Borough of Neptune City v. Borough of Avon-By-The-Sea, 61 N.J. 296, 309 (1972); Van Ness v. Borough of Deal, 78 N.J. 174, 180 (1978); City of Long Branch v. Jui

A-3083-22

Yung Liu, 203 N.J. 464, 485 (2010); Susko v. Borough of Belmar, 458 N.J. Super. 583, 588 (App. Div. 2019).

We have limited an overbroad application of the Public Trust Doctrine, especially where state agency action is at issue. See Borough of Avalon v. N.J. Dep't of Env't Prot., 403 N.J. Super. 590, 606 (App. Div. 2008) (holding that the Public Trust Doctrine does not permit the NJDEP to impose parking and restroom requirements on municipalities owning and operating beaches.); State v. 1 Howe St. Bay Head, Ltd. Liab. Co., 463 N.J. Super. 312 (App. Div. 2020) (rejecting the Public Trust Doctrine as a basis to prevent the NJDEP from creating a perpetual easement to protect coastline properties damaged by Superstorm Sandy).

Plaintiffs point out Supreme Court precedent permitting the Public Trust Doctrine to be "molded and extended to meet changing conditions and needs of the public it was created to benefit." Borough of Neptune City, 61 N.J. at 309. However, relying on the Public Trust Doctrine to find a fundamental substantive due process right to a stable environment takes us far afield from our historic applications of the Public Trust Doctrine so far. To date, the Public Trust Doctrine has been invoked in disputes over access to, ownership of, and regulation of natural resources such as the shoreline. We have not used the

Public Trust Doctrine in this novel way, to scrutinize, and perhaps regulate, the State's pension fund investment decisions because those decisions are alleged to harm the State's natural resources.

Further, even if our historic use of the Public Trust Doctrine did relate to purported harm and danger to natural resources, and not ownership and access of those resources, plaintiffs would still need to articulate, as per the first step of our inquiry, a clearly defined liberty interest. Here, they ask us to find a fundamental right "to a stable environment," a proposed right far broader than the right to prevent public-trust assets from environmental harm. Such an ill-defined formulation of a fundamental right cannot serve as a basis for an NJCRA claim. See Susko, 458 N.J. Super. at 589-90 (finding defendants' conduct, while wrongful, did not establish NJCRA violations or entitle plaintiffs to counsel fees "because the [NJCRA] requires the violation of an unambiguous, specific statutory or constitutional provision . . . .").

We conclude that Juliana, the case on which plaintiffs rely, is inapposite. First, plaintiffs are asserting a state, not federal, constitutional claim. Second, the federal district court in Juliana analyzed plaintiffs' constitutional claims separately from their public trust claims. 217 F. Supp. 3d at 1252-61. It did not, as plaintiffs contend, find a constitutional basis for the claims. Instead, the

11

Juliana plaintiffs' public trust claims were analyzed "according to basic trust principles, which impose upon the trustee a fiduciary duty to 'protect the trust property against damage or destruction.'" Id. at 1245 (quoting George G. Bogert et al., Bogert's Trusts and Trustees, § 582 (2016)).  Amending the complaint to include a claim of violation of a fundamental right to a stable environment would have been a fruitless endeavor, because a subsequent motion to dismiss would have been granted.  Therefore, the trial court's denial of leave to amend was proper.  See, Prime Acct. Dep't v. Twp. of Carney's Point, 212 N.J. 493, 511 (2013).

B.

Plaintiffs' proposed amended complaint also seeks vindication of "rights as a Pension Fund Beneficiary."  Plaintiff Dawson is alleged to be "an employee who qualifies for Public Employees Retirement System [("PERS")] pension. . . ."  Plaintiff Dunkley's connection to PERS or the Fund is not apparent from the record.

Where a fundamental right is purported to be conferred by statute, New Jersey courts have adopted the test from Blessing v. Freestone, 520 U.S. 329, 340-41 (1997), which construed the NJCRA's federal analogue, 42 U.S.C.S. § 1983, to determine whether a substantive right exists.  Tumpson v. Farina, 218

12

N.J. 450, 476 (2014).  See also Harz, 234 N.J. at 331 (refining the Blessing test in light of Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002), to require a determination of "whether, by enacting the statute, the Legislature intended to confer a right on an individual").

PERS is governed by N.J.S.A. 43:15A-1 to -161.  The statute confers certain rights to potential members, such as the right to appeal denial of membership in PERS, N.J.S.A. 43:15A-7.3, and the right to an annual report of the fund's valuation, N.J.S.A. 43:15A-21.  Nowhere in the text of the pension statute can proof be found of legislative intent to authorize any agency, state official, or private citizen to use the public pension investment decisions to advance or hinder any fundamental constitutional right, express or implied, including the plaintiffs' proposed "right to a stable environment."  That said, an NJCRA claim cannot be sustained on those grounds.  There is no language in PERS that authorizes the agency to make investment decisions in any basis other than what is set forth in the PERS statute or the corresponding administrative code.  Therefore, the pension statutes do not provide a basis for finding a fundamental right to a stable environment and denial of leave to amend the complaint was proper.

III.

13

Finally, plaintiffs urge us to remand the matter "to determine the amount of investment into the 200 largest oil and gas companies and if that is consistent with a constitutional right to a stable environment or is arbitrary in relation to New Jersey's state policies to divest from oil and gas." They cite N.J.S.A. 52:18A-89.14 and -89.16 as examples of New Jersey law "recogniz[ing] that passive investment into entities which are inimical to the rights and interests of New Jersey citizens can be prohibited." They argue the State has both a constitutional obligation to protect assets in the public trust and a statutory obligation under N.J.S.A. 13:1D-150 and N.J.A.C. 7:7-1.5 to do the same. They maintain the fund's investments constitute arbitrary and capricious action in that they conflict with "other governmental decisions to address Climate Catastrophe[,]" namely the Platkin Suit. They submit this inconsistency "is the definition of arbitrariness."

When an issue cannot be "decid[ed] without an initial policy determination of a kind clearly for nonjudicial discretion," a political question is presented. Gilbert v. Gladden, 87 N.J. 275, 282 (1981) (quoting Baker v. Carr, 369 U.S. 186, 217 (1962)). "Deciding whether a matter presents a nonjusticiable political question is a 'delicate exercise in constitutional interpretation . . . .'" Ibid. Non-justiciability determinations on political-

question grounds "is primarily a function of the separation of powers." Baker, 369 U.S. at 210. Dismissal for non-justiciability requires "one of the following 'criteria [to] be inextricable from the facts and circumstances of the case'":

> a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.
>
> [N.J. Election Law Enf't Comm'n v. DiVincenzo, 451 N.J. Super. 554, 564 (App. Div. 2017) (emphasis added) (quoting Gilbert, 87 N.J. at 282).]

Whenever a nonjusticiable political question is presented, we "should dismiss the case immediately so as not to spawn[] any legal consequences by any further discussion of a nonjusticiable issue." De Vesa v. Dorsey, 134 N.J. 420, 429 (1993) (Pollock, J., concurring) (alteration in original) (internal quotation marks omitted).

The New Jersey Constitution requires the Governor to "grant commissions to all officers elected or appointed pursuant to this Constitution" and to

"nominate and appoint, with the advice and consent of the Senate, all officers for whose election or appointment provision is not otherwise made by this Constitution or by law." N.J. Const., art. V, § I, ¶ 12. However, we are explicitly granted jurisdiction over appeals from "the law and chancery divisions of the Superior Court and in such other causes as may be provided by law." N.J. Const., art. VI, § V, ¶ 2. See also R. 2:2-3(a)(2) (granting the Appellate Division review of "final decisions or actions of any state administrative agency or officer . . . ."). At the same time, we lack authority to "'act independently' from, or 'substitute [their] judgment' for, an agency which is empowered to make the decision, the court is certainly empowered 'to bring [an] agency's action into conformity with its delegated authority.'" Rosenstein v. State, Dep't of Treasury, Div. of Pensions & Benefits, 438 N.J. Super. 491, 499 n.3 (App. Div. 2014) (alteration in original) (quoting In re Polk License Revocation, 90 N.J. 550, 578).

The Division of Investments is an agency within the Department of Treasury, N.J.S.A. 52:18A-79, and manages state employee pension funds, N.J.S.A. 52:18A-88.1, in accordance with policies and procedures established by the State Investment Council ("SIC"), N.J.S.A. 52:18A-91. The Director is statutorily given the "functions, powers[,] and duties . . . of, or relating to,

investment or reinvestment of moneys of, and purchase, sale or exchange of any investments or securities of or for any funds or accounts under the control and management of [public pension systems] . . . ."  N.J.S.A. 52:18A-85.  "[S]uch investments [] shall be authorized or approved for investment by regulation of the State Investment Council . . . ."  N.J.S.A. 52:18A-88.1.  The Director has a fiduciary duty to "exercise the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use . . . ."  N.J.S.A. 52:18A-89.  The Director must "manage and invest the portfolio solely in the interests of the beneficiaries of the portfolio and <u>for the exclusive purpose of providing financial benefits to the beneficiaries of the portfolio</u>."  <u>Ibid.</u> (emphasis added).

Statutory provisions carve out the only express exceptions to this mandate. The Legislature has passed statutes that specifically prohibited certain types of investments.  <u>See</u> N.J.S.A. 52:18A-89.16 (prohibiting investment in companies "engaging in prohibited activities in Russia or Belarus"); N.J.S.A. 52:18A-89.14 (prohibiting investments with companies boycotting Israel); N.J.S.A. 52:18A-89.12 (prohibiting investments in foreign companies with equity ties to Iran); N.J.S.A. 52:18A-89.9 (prohibiting investment in foreign companies with equity ties to the government of Sudan).

Because the Legislature has not expressly identified violation of the Public Trust Doctrine as an exception under the current statutory scheme, it is not a basis for plaintiffs' challenge to the Director's investment decision and it cannot be said that passively investing in these companies is arbitrary. We conclude the Governor's choice of Treasurer, the appointment of the Director, and his discretionary investment decision are non-justiciable political questions which are appropriately directed to the Legislature.[2]

Affirmed in part, denied in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] The Legislature has introduced Senate Bill No. 198 which would require divestment from the 200 largest publicly traded fossil fuel companies. S.198 (2024).

A-3083-22